## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| FOAMEX INTERNATIONAL, INC., et al., | ) | |
| | ) | Case No.  05-12685 (KG) |
| Debtors. | ) | (Jointly Administered) |
| ‎_____ | ) | |
| | ) | |
| THOMAS E. CHORMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 06-50824 (KG) |
| | ) | |
| v. | ) | |
| | ) | |
| FOAMEX INTERNATIONAL, INC., | ) | |
| RAYMOND E. MABUS, JR. AND | ) | |
| GREGORY J. CHRISTIAN, | ) | **Re: Dkt. Nos. 53, 90, 91, 93, 97,** |
| | ) | **103, 106, 115, 116, 118, 121, 124.** |
| Defendants. | ) | |
| ‎_____ | ) | |

## OPINION

Before the Court is the Amended Complaint filed by Plaintiff Thomas Chorman ("Plaintiff" or "Chorman") (D.I. 53)  (the "Amended Complaint"), the Motion for Summary Judgment filed by Defendants Raymond Mabus, Jr. ("Mabus") and Gregory Christian ("Christian") (collectively, the "Defendants") (D.I. 90 and 91) (the "Motion"), the Response in Opposition to the Motion filed by Plaintiff (D.I. 97) (the "Response"), and Defendants' Reply thereto (D.I. 103). The Court conducted oral argument on December 10, 2012.  For the reasons set forth below, the Court finds that Defendants are entitled to summary judgment on Plaintiff's tortious interference claim.

## JURISDICTION

By order dated February 22, 2012, the Court determined that this proceeding is non-core pursuant to 28 U.S.C. § 156(b)(3). (D.I. 118). The parties thereafter moved to withdraw the reference, and by order dated April 5, 2012, the District Court referred the matter back to this Court for discovery and resolution of pending motions. (D.I. 121). Therefore, the Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and (c)(1), and § 1334(e). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

Plaintiff commenced this adversary proceeding on September 13, 2006, and filed the Amended Complaint on September 27, 2007. (D.I. 53). Among other claims, Plaintiff asserted a cause of action for tortious interference with contract against Mabus and Christian.[1] The parties have completed discovery, and the tortious interference with contract claim is ripe for adjudication.

In setting forth the facts underlying this dispute, the Court has the benefit of affidavits from Defendants that are unrefuted by Plaintiff. In 2002, by at-will employment agreement, Chorman became president and chief executive officer ("CEO") of Foamex under the active guidance of Marshall Cogan ("Cogan"), the founder of Foamex and Chair of the Foamex Board of Directors (the "Board"). Mabus Aff. at ¶ 6, *Pl.'s Resp. Ex. B*. When Cogan resigned in February 2004, Mabus was elected the new Chair of the Board. *Id.* at ¶ 7. Following his election, the Board members raised concerns regarding Chorman's ability to perform his duties as CEO absent guidance because his performance in the previous 1.5 years was unimpressive. *Id.* at ¶ 7-8. However, the Board was desirous of stability in the CEO position, which had significant turnover in previous years; therefore,

---

[1] By Order dated March 29, 2007, the Court dismissed all other claims asserted against Defendants Mabus and Christian. (D.I. 43).

2

Mabus took on an uncharacteristically active supervisory role of Chorman's performance in the hopes Chorman would "grow into" the position. *Id.* at ¶ 8. Mabus mentored Chorman on a daily basis regarding the operations and business of Foamex, for which he received additional compensation of $150,000, taking his total compensation package at the time to $300,000. *Id.* at ¶ 9-10.

Despite this guidance, Chorman continued to underperform. His presentations to the Board were "inadequate" and his communication skills were "poor." *Id.* at ¶ 10. He consistently provided inaccurate financial data and forecasts to the Board. *Id.* at ¶ 11, 13, 19. Faced with fledgling performance and mistrust in the numbers presented by Chorman, the Board formed a Special Committee for Restructuring and engaged Miller Buckfire as financial consultants to prepare for the reality of a bankruptcy filing. *Id.* at ¶ 11-12. Miller Buckfire was chosen over Chorman's recommendation of Lehmann Brothers due to its restructuring expertise. *Id.* at ¶ 15. During this time, Chorman also recommended the current chief financial officer, Doug Ralph ("Ralph"), for the role of chief restructuring officer. But due to the Board's perception of Ralph's role in the years of inaccurate financial reporting provided to the Board, the Special Committee recommended, and the Board selected, Foamex's General Counsel, Christian, to act as chief restructuring officer. *Id.* at ¶ 14. Christian Aff. at ¶ 5.

Despite Chorman's assertions that "failure [was] not an option," due to concerns over the company's ability to service its debt, the Board voted in favor of a Chapter 11 bankruptcy filing on September 18, 2005, and filed the next day. Mabus Aff. at ¶ 16. Post-filing, Chorman continued to present inaccurate financial forecasts, ranging from overly optimistic to overly pessimistic, and voiced his fear about strategic changes designed to enhance profitability, including price increases.

*Id.* at ¶ 19-22.  Foamex then engaged Alvarez & Marsal ("AM") to develop a business plan and a plan to exit from bankruptcy.  *Id.* at ¶ 19.  In April and May of 2006, AM made several presentations with findings and recommendations to the Board, including: (1) the current business plan in place by Chorman was not well thought-out or understood by Chorman; (2) during Chorman's tenure as CEO, Foamex spent more than $40 million on J.D. Edwards reporting software that had realized little to no value; (3) Chorman was not supportive of the business ventures that would ultimately contribute to Foamex's long-term profitability; and (4) Chorman should not be the president/CEO of Foamex because he "did not have the right skills or the necessary command of the business and financial information to lead Foamex through a business plan and an exit out of bankruptcy."  *Id.* at ¶ 24-25.  Based in part on these reports, coupled with the ongoing concerns related to Chorman's inability to perform, on June 1, 2006, Mabus informed Chorman that the Board was asking him to resign.  *Id.* at ¶ 25, 28.

At the time, Mabus was the Board's Chairman, and Christian served as executive vice president, general counsel and chief restructuring officer.  *Id.* at ¶ 26, 30.  Following Plaintiff's departure, Mabus became president and CEO, and Christian became a member of the Board and chief administrative officer—roles previously held by Plaintiff—and both obtained commensurate increases in compensation.  *Id.*; Christian Aff. at ¶ 12-13.

In his Amended Complaint and Response, Chorman alleges that he was forced to resign without good cause.  Namely, he claims that Defendants, acting outside the scope of their official duties, orchestrated his removal in pursuit of personal financial gain and professional advancement.  Plaintiff draws this conclusion despite a complete lack of evidence in support of his position.  Aside from pointing to an absence of formal reprimands regarding his performance, Chorman produced

only one email, sent by Christian on June 7, 2006, stating that matters would turn "ugly" if Chorman failed to resign because the Board would be forced to consider resolutions to remove him.  *Pl.'s Resp. Ex. T*.  In his pleadings, Chorman also alludes to various circumstantial, arguably inadmissible, evidence, including: (1) assertions regarding the financial performance of Foamex; (2) the fact that his employment contracts were continually renewed with pay increases; and (3) two alleged conversations with Foamex directors who told Chorman that Mabus "informed" the Board of Chorman's removal, rather than putting it to a vote; and another said Chorman's firing was a "cabal."  Pl. Dep. a-t 115-16, 118, 120-21/A046-A047, A048, A050-A051.

On February 24, 2011, Defendants moved for summary judgment on the ground that, under Pennsylvania law, a claim for tortious interference does not lie with respect to employment contracts that are terminable at will, such as Chorman's contract with Foamex.  In the alternative,  Defendants argue that the factual record fails to establish a triable issue on essential elements of the claim.

**<u>DISCUSSION</u>**

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine "when reasonable minds could disagree on the result." *Delta Mills, Inc. v. GMAC Comm. Fin., Inc.* (*In re Delta Mills, Inc.*), 404 B.R. 95, 105 (Bankr. D. Del. 2009).  The

moving party bears the burden of demonstrating an entitlement to summary judgment.  *McAnaney v. Astoria Fin. Corp.*, 665 F.Supp. 2d 132, 141 (E.D.N.Y. 2009).

Summary judgment serves to "isolate and dispose of factually unsupported claims or defenses" and avoid unnecessary trial where the facts are settled.  *Delta Mills*, 404 B.R. at 104 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Thus, at this stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *Celotex*, 477 U.S at 317.  The Court must view all facts in the light most favorable to the non-movant and draw all reasonable inferences from the underlying facts in favor of the non-movant.  *McAnaney*, 665 F.Supp. 2d at 141; *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).  Any doubt must also be construed in the non-moving party's favor.  *Delta Mills*, 404 B.R. at 105.

Once the moving party provides sufficient evidence, the burden shifts to the non-moving party to rebut the evidence.  *Id*. at 105.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *McAnaney*, 665 F.Supp.2d at 141 (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)).  "[T]he mere existence of some alleged factual dispute between the parties" cannot defeat a properly supported summary judgment motion.  *Anderson*, 477 U.S. at 247–48.  The dispute must relate to a genuine issue of material fact. *Delta Mills*, 404 B.R. at 105.  Thus, a non-moving party cannot defeat a summary judgment motion based on conclusory allegations and denials, but instead must provide supportive arguments or facts that show the necessity of a trial.  *McAnaney*, 665 F.Supp.2d at 141.  Summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most

favorable to the non-moving party, the Court concludes that there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

Moreover, "the summary judgment Rule 56(b) by reason of its language applies at any time, if it appears by uncontradicted proof that a party to a proceeding actually has no cause of action." *Miller v. Hoffman*, 1 F.R.D. 290, 292 (D.N.J. 1940).  If, under the facts developed, the Court at a trial would be required to direct a verdict for the moving party, then a summary judgment should be entered.  *Id. citing Gasifier Mfg. Co. v. Ford Motor Co.*, D.C., 1 F.R.D. 10 (E.D. Mo. 1939); *Whiteman v. Federal Life Ins. Co.*, D.C., 1 F.R.D. 95 (W.D. Mo. 1939); *Mutual Life Ins. Co. of New York v. Ballard, D.C.*, 1 F.R.D. 180 (S.D. Fla. 1940); *Sun Oil Co. v. Blevins, D.C.*, 29 F.Supp. 901 (W.D. La. 1939).

**Viability of Intentional Interference Claim**

When analyzing an issue grounded in state law, the Court must look to how state courts have ruled on the law.  A federal court is bound to follow state law announced by the state's highest court, and "[i]f the highest court has not spoken to the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." *Mosley v. Wilson*, 102 F.3d 85, 92 (3d Cir. 1996).  While the decrees of lower state courts are not binding, they "should be attributed some weight . . .  where the highest court of the State has not spoken on the point."  *Comm'r. of I.R.S. v. Estate of Bosh*, 387 U.S. 456, 465 (1967).

Similarly, when predicting state law, the Court may look to "federal courts interpreting that state law." *Spence v. The ESAB Grp., Inc.*, 623 F.3d 212, 216-17 (3d Cir. 2010).  Courts have found the bankruptcy judge:

> is not only free to disagree with a prior decision of her district court determining the same issue of state law, but she is obliged to reach her own interpretation of that law, and to make her own prediction (if necessary) as to how the highest court of the state would rule on that question: a court of the United States is obliged 'in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe to a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts.'

*In re Dembrosky*, 235 B.R. 245, 247-48 (Bankr. W.D.N.Y. 1999) *rev'd sub nom. Chrysler Fin. Co., L.L.C. v. Schlant*, 243 B.R. 613 (W.D.N.Y. 2000) (citing *West v. American Telephone and Telegraph Co.*, 311 U.S. 223, 237 (1940)).  *See also Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 & n. 7 (3d Cir. 1991) (holding the doctrine of *stare decisis* does not compel one district court judge to follow the decision of another).

The Supreme Court of Pennsylvania has never ruled on whether a claim for tortious interference with contract can be maintained with respect to an at-will employment contract.  Thus, the Court must predict how it would resolve the issue "using all available data, especially the decisions of the state's lower courts." *Chrysler Fin. Co., L.L.C.*, 243 B.R. at 617.  Confronted with the issue of whether Pennsylvania recognizes a claim for tortious interference with an at-will employment contract, the Pennsylvania courts have produced a morass of inconsistent rulings. *Compare Haun v. Community Health Sys., Inc.*, 14 A.3d 120, 125 (Pa. Super. Ct. 2011) (finding a cause of action does not exist); *Hennessey v. Santiago*, 708 A.2d 1269, 1279 (Pa. Super. Ct. 1998) (finding a cause of action does not exist); *with Curran v. Children's Service Center of Wyoming County, Inc.*, 578 A.2d 8, 13 (Pa. Super. Ct. 1990) (finding a cause of action exists), *appeal denied*,

585 A.2d 468 (Pa. 1991); *Yaindl v. Ingersoll-Rand Co.*, 422 A.2d 611, 618 (Pa. Super. Ct. 1980) (finding a cause of action exists).

District courts in the Third Circuit have similarly reached inconsistent predictions on this issue.  Cases which predict that the Supreme Court of Pennsylvania will following *Yaindl* and recognize a cause of action for tortious interference with an existing, at-will employment relationship include: *Mason v. Range Resources-Appalachia, LLC*, No. 12-369, 2012 WL 2116969, *1, *7 (W.D. Pa. May 9, 2012)  (Report and Recommendation of Magistrate Judge adopted by District Court); *White v. Brommer*, 747 F. Supp. 2d 447, 471 (E.D. Pa. 2010); *Brooks v. Sys. Mfg. Corp.*, No. 03–1523, 2004 WL 2028755, *1, *5–8 (E.D. Pa. Sept. 10, 2004); *McClease v. R.R. Donnelley & Sons Co.*, 226 F.Supp.2d 695, 703–04 (E.D. Pa. 2002); *Gallas v. Sup. Ct. of Pa.*, No. 96–6450, 1998 WL 22081, *1, *5 (E.D. Pa. Jan. 22, 1998).  Cases which predict that the Supreme Court of Pennsylvania will follow *Hennessy* and rule that no such cause of action exists include: *Carter v. Philadelphia Stock Exchange*, No. 99-2455, 1999 WL 715205, *1,*4–5 (E.D. Pa. Aug. 26, 1999); *Parvensky–Barwell v. County of Chester*, No. 98-3664, 1999 WL 213371, *1,*8 (E.D. Pa. Apr. 13, 1999); *Buckwalter v. ICI Explosives USA*, No. 96–CV–4795, 1998 WL 195701, *1, *1–2,(E.D. Pa. Mar. 25, 1998) ("*Buckwalter I*"); *Buckwalter v. ICI Explosives USA*, No. 96–CV–4795, 1998 WL 54355, *1, *19 (E.D. Pa. Jan. 8, 1998) ("*Buckwalter II*").

In *Mason*, by a cogent analysis of the decisions of the Pennsylvania trial courts and district courts for the Third Circuit, Magistrate Judge Mitchell of the Western District of Pennsylvania predicted that the Supreme Court of Pennsylvania would find a plaintiff may maintain a cause of action for tortious interference with contract in the context of existing, at-will employment.  *See Mason*, 2012 WL 2116969 at *5-6 (citing *White*, 747 F. Supp. 2d at 469).  The Court agrees with

the reasoning and conclusion reached in *Mason,* and predicts that the Supreme Court of Pennsylvania

would hold that a cause of action for intentional interference with the performance of a contract lies

with existing, at-will employment. This prediction is based on review of the opinions issued by the

trial courts of Pennsylvania, the district courts in the Third Circuit, and the *Restatement (Second) of*

*Torts* § 766 (the "*Restatement*"), which Pennsylvania generally follows.[2]

The majority of opinions, including *Mason*, finding a cause of action for interference with

contract lies in the context of at-will employment contracts turn on interpretations of § 766 of the

*Restatement*. These courts have found that "neither the *Restatement* itself nor the elements of the

tort under Pennsylvania law limit its application to contracts of a certain kind." *Mason*, 2012 WL

2116969 at *4. Comment (g) to § 766 provides,

> [a] similar situation exists with a contract that, by its terms or otherwise, permits the
> third person to terminate the agreement at will. Until he has so terminated it, the
> contract is valid and subsisting, and the defendant may not interfere with it. . . One's
> interest in a contract terminable at will is primarily an interest in future relations
> between the parties, and he has no legal assurance of them. For this reason, an
> interference with this interest is closely analogous to interference with prospective
> contractual relations.

The Supreme Court of Pennsylvania has expressly adopted this section of the *Restatement*, which

by its language lends authority to the conclusion that the court would recognize "a cause of action

for tortious interference with an existing, at-will employment relationship." *Mason*, 2012 WL

2116969, at *5-6.

The two state court decisions that dismissed tortious interference claims for at-will

employment contracts, *Hennessey* and *Haun*, entirely failed to discuss the *Restatement*. Since the

Supreme Court of Pennsylvania expressly adopted a relevant portion of the *Restatement*, a review

---

[2] *Restatement* § 766 (1979). Pennsylvania follows the Restatement, and has expressly adopted this
section of the Restatement. *See Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 393 A.2d 1175, 1183
(Pa. 1978).

of its provisions is necessary in the analysis. *See Id.* at *6-8. Indeed, the *Restatement* plainly supports the viability of claims for at-will contracts. *See Id.* Further, *Hennessey, Haun*, and the district court opinions in *Carter*, *Parvensky–Barwell*, *Buckwalter I* and *Buckwalter II,* are essentially self-referential and offer no other compelling justification for excluding at-will contracts under Pennsylvania law. *See Id.* at *7. The Court also agrees with Magistrate Judge Mitchell in *Mason* that *Haun*, the principal case relied upon by Defendants, "compounds the errors" of the evolution of this body of case law. *Id. at *7* (concluding that those cases "fail[] to discuss . . . the *Restatement* or its comments and concede[] that a cause of action exists for tortious interference with a prospective, at-will employment relationship, yet fail[] to explain why no cause of action may be maintained for an existing, at-will employment relationship"); *see Haun*, 14 A.3d at 120. Accordingly, the Court finds that the Supreme Court of Pennsylvania would likely recognize a cause of action for tortious interference with respect to at-will employment contracts.

**Elements of Intentional Interference with Contract Claim**

Although the Supreme Court of Pennsylvania would likely recognize this cause of action, Plaintiff has not presented sufficient evidence in support of his Complaint or Response to withstand the Motion for Summary Judgment on his tortious interference with contract claim. Defendants have met their initial burden under Rule 56(a), and Plaintiff is obliged to rebut the evidence and demonstrate a genuine issue for trial. Under Pennsylvania law, the elements for a cause of action for intentional interference with an existing or prospective contractual relation are: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the

11

part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (2d Cir. 2000) (citing *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)).

> Plaintiff's Claim Fails Because Neither Defendant is a Third Party, Nor Did Defendants Act Outside The Scope of Their Employment

As an initial matter, Plaintiff's claim fails to establish a cause of action under Pennsylvania law because it sets forth no evidence a third party interfered with his employment contract. The existence of a relationship between the plaintiff and a "third person" other than the defendant is essential to a right of recovery. *Rutherford v. Presbyterian Univ. Hosp.*, 612 A.2d 500, 507-08 (Pa. Super. Ct. 1992) ("By definition, this cause of action requires three separate parties; parties to a contract or employment relationship cannot assert this cause of action against each other"). For purposes of this tort, agents of a corporation are considered the same party as their corporation. *Feury v. Provco Group, Ltd.*, No. 09-CV-1341, 2010 WL 2527678, *1, *5 (E.D. Pa. Jun. 17, 2010). Indeed, applying the strictures of this tort to the termination of an existing, at-will employment contract by other employees of the company would vitiate the "at-will" feature of the contract. Such contracts have not been "interfered" with, as defined by the *Restatement*, but rather have been terminated according to the parties' understanding there was no legal assurance the contract would continue in perpetuity. *See, e.g., Dzierwa v. Michigan Oil Co*, 393 NW.2d 610 (Mich. App. 1986) ("At-will employment contracts have posed some analytical difficulties in tortious interference cases, particularly where an employee seeks damages caused by his discharge. When viewed under the tortious interference cause of action requiring a breach of contract, the courts have held that a discharge from employment is an insufficient basis upon which to establish the claim since no breach arises from the termination.").

In instances where the state courts of Pennsylvania and the district courts for the Third Circuit construing Pennsylvania state law have extended the tort of interference with contract to at-will employment relationships, the facts have involved an outside, third party.  *See, e.g., Yaindl*, 422 A.2d at 618 (finding a third party existed because two divisions of a company effectively operated as two separate companies); *Curran*, 578 A.2d at 13 (finding there was no third party because the defendant was an agent of the plaintiff's employer); *Brooks*, 2004 WL 2028755 at *5–8 (finding that the plaintiff's former employer deliberately interfered with new employment prospects and was a third party under the tort of interference with contract); *McClease*, 226 F.Supp.2d at 703 (finding a third party existed where plaintiff was employed by temporary agency and the workers at one of his placements caused him to be released from his contract with the agency).  It is uncontested that both Defendants are agents of Foamex - Christian in various management roles and Mabus as a member of the Board.  Neither qualify as "third parties" under the elements of the tort set forth by Pennsylvania courts.

Plaintiff alleges that although Defendants may not be third parties, they acted outside the scope of their employment to terminate him.  While it is true that "acts committed by an agent outside the scope of employment or agency may satisfy the 'tripartite relationship' required for a tortious interference claim," it is also true that "a corporate officer, director, trustee or other management level agent is *not* personally liable for inducing breach of contract unless the individual's *sole* motive in causing the corporation to breach a contract is actual malice directed toward the plaintiff, or the individual's conduct is against the interest of the corporation."  *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001); *Avins v. Moll*, 610 F.Supp. 308, 318 (E.D. Pa 1984) (emphasis in original).  The factual record before the Court, which includes

corporate records, deposition transcripts, and numerous affidavits of persons involved in Plaintiff's termination, depicts Plaintiff's termination as a conventional exercise of business judgment. As discussed further below, Plaintiff provides no evidence, beyond mere assertions, that Defendants took action outside the scope of their official duties to harm Plaintiff.

<u>Plaintiff's Claim Also Fails Because There is No Evidence Defendants Specifically Intended to Harm Him, Or That The Decision Was Not Made in The Best Interests of Foamex</u>

Plaintiff's claim fails to meet the elements of the tort because he advances no facts to establish that Defendants acted with specific intent to harm him. *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971). To establish intent, Plaintiff principally relies on a few statements in email and phone conversations following the Board's request for his resignation. The first, Christian's comment that things would get "ugly," plainly addresses the Board's readiness to take affirmative steps to remove him if he failed to resign. The Court cannot reasonably infer from this statement that Christian plotted to remove Plaintiff for personal gain. Moreover, it is unrefuted that Christian was not a decision-maker in the removal of Plaintiff. Even viewed in the most favorable light, the facts and circumstances relied upon by Plaintiff fail to provide adequate support for the his allegations or contradict the evidence set forth by Defendants.

Second, leaving aside questions of admissibility, Plaintiff points to unverified statements made by two Foamex directors - one stating that Mabus "informed" the Board of Chorman's removal, and another who said it was a "cabal." This purported evidence is also insufficient to raise a triable issue as to whether Mabus took purposeful action outside the scope of his employment to cause Chorman's termination. As in Mabus' role as a corporate officer, it was plainly "within the managerial scope of board members to make employment decisions" regarding Plaintiff's termination. *Feury*, 2010 WL 2527678 at *7; *Nix v. Temple Univ.*, 596 A.2d 1132, 1137 (Pa. Super.

Ct. 1991). Relying on mere assertions, Plaintiff asks the Court to infer that Defendants privately schemed to remove him and forced the Board to accommodate their wishes without a vote. But these statements are hardly smoking-gun evidence, and the Court finds no record support for Plaintiff's interpretation. Rather, the uncontradicted record depicts Defendants acting, if at all, as agents of the company in a normal corporate governance process.[3]

Also, the evidence strongly indicates that the decision was made with the best interests of the corporation in mind. *See Avins v. Moll*, 610 F.Supp. at 318. Before asking for Plaintiff's resignation, the company's outside advisors, a special committee of the Board, and finally the full Board considered his removal. Plaintiff has produced no evidence that members of the Board dissented from his removal, or that the decision was based on anything other than the exercise of business judgment by Foamex management. The Court finds that the alleged statements do not support an inference that Defendants acted against the interests of Foamex in the decision to terminate Plaintiff.

<u>Plaintiff Further Fails to Establish That Defendants' Actions Lacked Privilege or Justification</u>

The tort of interference with contract also requires "proof the defendant's actions were improper under the circumstances presented." *Foster v. UPMC South Side Hosp.*, 2 A.3d 644, 666 (Pa. Super. Ct. 2010). This necessitates a showing that Defendants' actions were not privileged or justified. *Triffin v. Janssen*, 626 A.2d 571, 574 (Pa. Super. Ct. 1993). *See also Restatement* § 767. The factors cited by Plaintiff to establish Defendants' lack of privilege are not compelling. Circumstantial evidence such as Foamex's positive earnings during Plaintiff's tenure, and the

---

[3] In the decade prior to Plaintiff's removal, the company's Chief Executive Officer position had many changes and high turnover. At least ten different individuals served—and presumably were removed or resigned—as the company's CEO. Mabus Aff. at ¶ 7.

15

renewal of his employment contracts with raises cannot tip the scales to create a triable issue of fact on Plaintiff's tortious interference claim. The decision to terminate Plaintiff sounds in business judgment. Also, the factual record establishes Christian was not involved in the decision to terminate Plaintiff, and Mabus was acting within the scope of his duties as a member of the Board. Aside from pointing to Defendants' respective promotions and salary increases upon Plaintiff's termination, Plaintiff has advanced *no* facts to establish Defendants caused the Board to demand his resignation. Accordingly, Plaintiff's desired interpretation of the circumstantial evidence is speculative at best.

Finally, the Court notes that during the pendency of Plaintiff's claims against Foamex and its directors, Plaintiff has had approximately five years to develop a factual record supporting his claims. To date, Plaintiff has not advanced a single fact sufficient to establish that his termination was for any reason aside from business judgment. Summary judgment should not be denied on the hope and prayer of a magic moment at trial

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED.

Dated: April 4, 2013

KEVIN GROSS, U.S.B.J.